MARC A. PILOTIN
Regional Solicitor
JESSICA FLORES
Counsel for Civil Rights
DORIS Y. NG (California Bar No. 169544)
Trial Attorney
Office of the Solicitor
UNITED STATES DEPARTMENT OF LABOR
90 7th Street Suite 3-700
San Francisco California 94103
Telephone: 415-625-2224
Ng.doris.y@dol.gov
*Attorneys for Plaintiff Julie A. Su, Acting Secretary of Labor*
*United States Department of Labor*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JULIE A. SU,[1]<br>Acting Secretary of Labor,<br>United States Department of Labor,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>    Defendant. | Case No. NO. 3:21-CV-01454-AN<br><br>**[PLAINTIFF'S SUGGESTED] FINDINGS OF FACTS AND CONCLUSIONS OF LAW**<br><br>Pretrial Conference Date: April 9, 2024<br><br>Trial Date: April 22, 2024 |

---

[1] Julie A. Su became Acting Secretary of Labor on March 13, 2023. Pursuant to Fed. R. Civ. P. 25(d), the caption has been changed to reflect this.

Plaintiff Acting Secretary of Labor Julie A. Su filed this Action alleging Defendant USPS violated section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. §§ 651, *et seq.* ("the Act") when it terminated Cassandra Hankins ("Complainant" or "Ms. Hankins") while she was on probation because she reported her workplace injury to USPS. A bench trial was held to adjudicate the Acting Secretary's claims. For the reasons set forth below, the Court enters Judgment in favor of the Acting Secretary.

## I. BACKGROUND AND PROCEDURAL HISTORY

Complainant Cassandra Hankins filed a complaint with the United States Department of Labor, Occupational Safety and Health Administration (OSHA) alleging Defendant United States Postal Service (USPS) terminated her for reporting her workplace injury. OSHA investigated the complaint and found it meritorious. The Acting Secretary of Labor thereafter filed a Complaint on October 5, 2021. Dkt. No. 1. The Acting Secretary initiated this enforcement Action to remedy USPS's violation of Section 11(c)(1) of the Act (29 U.S.C. § 660(c)(1)) ("Section 11(c)"), recover compensatory and punitive damages, and to obtain injunctive relief. In the Proposed Pretrial Order, the Acting Secretary raised the issue of amending her Complaint to specifically allege USPS acted with oppression, malice, or reckless disregard of Ms. Hankins's rights under the Act and to specifically seek punitive damages. Dkt. No. 34, p. 9. The Court granted the Acting Secretary's request to amend her complaint and the complaint is so amended.[2]

The Court held a three-day bench trial beginning on April 22, 2024. The Court has carefully considered the witness testimony and trial exhibits, the parties' separate Suggested Findings of Fact and Conclusions of Law, the parties' respective trial briefs, and the

---

[2] During the pretrial conference on April 9, 2024, the Acting Secretary moved to amend her Complaint to specifically allege USPS acted with malice, oppression, or reckless disregard and to specifically seek punitive damages, where her Complaint generally sought "such other and further relief as may be necessary and appropriate." Dkt. No. 1, p. 4. Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be freely given when "justice so requires." Fed. R. Civ. P. 15(a). The Court finds Defendant will not suffer prejudice as a result of this amendment as defense counsel was aware the Acting Secretary planned to seek punitive damages, and had previously stipulated during meet and confer sessions to the request to amend, but subsequently withdrew its agreement. The Court therefore granted the Acting Secretary's request to amend.

arguments of counsel. The following constitute the Court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## II.   FINDINGS OF FACT

1) Ms. Hankins began work as a City Carrier Assistant (CCA) for USPS on November 10, 2018, with a probationary period of 90 days, which would have ended on February 8, 2019. (Stipulated Facts, Dkt. No. 34, p. 2)

2) At trial, Ms. Hankins testified that although she had been hired to work in the Dallas, Oregon office, she was reassigned to the Monmouth, Oregon office. During her employment, she worked mostly at the Corvallis, Oregon office, with occasional work at other offices in Oregon. Although her supervisor was Postmaster Melissa McCormick ("McCormick"), Ms. Hankins rarely saw McCormick who worked out of the Monmouth office. Instead, Ms. Hankins received assignments from supervisors in the Corvallis office. (Stipulated Facts, Dkt. No. 34, p. 2; these facts are largely undisputed.)

3) On January 7, 2019, Ms. Hankins injured the back of her left knee when she stepped onto the back of her USPS vehicle to unload mail at the end of her shift. Ms. Hankins reported her injury to USPS that same day. The next day, she was in so much pain she went to the emergency room. Her doctors diagnosed her with a calf strain and took her off work until approximately February 12, 2019, at which time she was allowed to return to work with restrictions. While Ms. Hankins was off work on doctor's orders, USPS called her in for an investigative interview on January 25, 2019. Then-Postmaster and Manager Deborah Martin ("Martin") conducted the investigative interview. During the interview, Martin asked Ms. Hankins whether there was a boat hook in the USPS Long Life Vehicle ("LLV") Ms. Hankins drove on the date of her injury. Ms. Hankins responded "No." (Stipulated Facts, Dkt. No. 34, pps. 3-4) (Trial Testimony)

4) At trial, Ms. Hankins testified that she did not see a boat hook in the LLV that day, nor did she specifically look for one. She also testified that during the investigative interview, Martin accused her of having "jumped" onto the back of the LLV. Apparently, Martin based this on a hand-written notation on a medical form that stated "jumping on jeep" to describe how Ms. Hankins's sustained her injury. Ms. Hankins explained to Martin that it was the orthopedist's office who wrote "jump." Ms. Hankins testified that she did not write "jumping on jeep" and at no time did she jump into her LLV. Other evidence supports that Ms. Hankins stepped into the LLV; she did not jump. Exhibits 1, 5.

5) Martin did not ask Ms. Hankins any follow-up questions after the in-person interview. (Stipulated Facts, Dkt. No. 34, p. 4) Postmaster McCormick testified Manager Martin made the decision to terminate Ms. Hankins and Martin was also the one who wrote the termination letter for McCormick to sign "as soon as possible" upon her return from a leave. McCormick signed the letter after having a brief conversation with Martin wherein Martin told her Ms. Hankins had been injured while working at the Corvallis office. It is undisputed that McCormick did not conduct her own investigation, but relied on what Martin told her about the reason for terminating Ms. Hankins. Martin in turn denied that she wrote the termination letter or that she was the decisionmaker. Martin Depo. Tr. at 23:6-7; 33:8-22.

6) On or about January 28, 2019, USPS issued a Notice of Separation to Ms. Hankins, citing her failure "to grasp the fundamental skills required" and her "inability to meet the basic performance requirements" of her job as the reason for her termination. Martin testified Ms. Hankins was terminated for failure to use a boat hook. Ms. Hankins would have passed her probation days later, on February 8th. (Stipulated Facts, Dkt. No. 34, p. 4; Martin Depo. Tr. at 36:21-25.

7) USPS stipulates that Ms. Hankins engaged in protected activity under Section 11(c) of the Act when she reported her workplace injury, that USPS had knowledge of her protected activity, and that Ms. Hankins subsequently suffered an adverse action under the Act when USPS terminated her. (Stipulated Facts, Dkt. No. 34, pps. 4-5) It is undisputed that USPS terminated Ms. Hankins 21 days after she reported her workplace injury and 11 days before she would have passed probation.

8) Ms. Hankins filed a timely administrative complaint with OSHA on January 31, 2019, alleging USPS terminated her while she was on probation because she reported a workplace injury. OSHA investigated her complaint and found USPS violated section 11(c) of the Act when it terminated Ms. Hankins for reporting her workplace injury. Thereafter, the Acting Secretary filed this Action. (Stipulated Facts, Dkt. No. 34, p. 5; Dkt. No. 1)

9) During her deposition, former USPS Postmaster Deborah Martin ("Manager Martin" or "Martin") testified that she spoke with her supervisor Jami Goodpastor [Manager over Portland] ("Goodpastor"), after conducting an investigative interview with Ms. Hankins. (Stipulated Facts, Dkt. No. 34, p. 5) Martin testified that she told Goodpastor there was a boat hook in the vehicle, but Ms. Hankins did not use it to reach the mail trays; that Ms. Goodpastor concluded Ms. Hankins did not perform her job in a safe manner; and a decision was made to terminate Ms. Hankins. Martin also testified she often informed new employees if they had a vehicle accident or an injury accident during their probationary period, they would likely be terminated. Martin testified she was essentially mentored on this practice. Martin admitted she received positive feedback about Ms. Hankins when she called the Corvallis office to speak with the supervisor there. Martin Depo. Tr. at 35:2-25; 36: 21-25; 43:2-17; 44:3-8; 46:12-17; 52:15-20; 54:2-5.

10) Postmaster Melissa McCormick ("Postmaster McCormick" or "McCormick"), who was in charge of the Monmouth and Corvallis post offices where Ms. Hankins was

assigned and worked, respectively, testified that failing to use a boat hook was not a terminable offense.

11) McCormick testified Martin told her to terminate Ms. Hankins, stating that Ms. Hankins got injured. McCormick testified she did not write the termination letter and she did not make the decision to terminate Ms. Hankins.

12) At trial, Ms. Hankins testified that, on a nearly daily basis, she received only positive feedback from the supervisor who assigned her work and she had not previously been warned about any unsafe behavior, nor had she previously been disciplined. Martin's and McCormick's testimony corroborated that Ms. Hankins had been doing a good job.

13) USPS's policy was to formally evaluate probationary employees at the 30-day, 60-day, and 80-day timeframes using Form 1750. Form 1750 documents expectations and whether the probationary employee's performance meets expectations. The employee must initial Form 1750 to show that they know what they need to improve. Failure to provide the evaluations and discussion of expectations constitutes a violation of USPS Portland District policy. (Stipulated Facts, Dkt. No. 34, p. 2-3; Amy Bennett Depo. Tr. at 10-11; 16-17; 19:14-25; 22-29.)

14) USPS Employee Handbook section 584.52, in effect during Ms. Hankins's employment, states:

> 584.52 Performance Evaluation Intervals
> The supervisor must discuss the employee's performance with the employee at the end of 30 days, and again at the end of 60 days. Both the supervisor and the employee must initial PS Form 1750 to indicate that these discussions have taken place. The final evaluation occurs at the end of 80 days, and it contains a definitive recommendation regarding whether the employee should be retained or separated. This evaluation requires the signatures of both the supervisor and the employee.

15) USPS Employee Handbook section 584.53, in effect during Ms. Hankins's employment, states:

> 584.53 Formal Evaluations at Other Intervals

Discussion, training, and counseling can correct most deficiencies. The manager makes additional formal evaluations only when informal evaluations are unsuccessful and only after employees understand their deficiencies and have had a reasonable opportunity to correct them. If these additional evaluations occur during an employee's probationary period, the manager documents them using PS Form 1750.

(Stipulated Facts, Dkt. No. 34, p. 2-3)

16) USPS failed to conduct any of the required 30-day, 60-day, 80-day formal evaluations of Ms. Hankins. (Stipulated Facts, Dkt. No. 34, p. 3)

17) Ms. Hankins testified that at no time did USPS inform her that she could be disciplined, including up to termination, for failing to use a boat hook, and at no time did USPS give her an opportunity to correct any alleged deficiency in her work performance before it terminated her.

18) Ms. Hankins testified that she did not receive training about any of the various locations where she could find a boat hook in an LLV, if one was available; how to retrieve, use, and re-attach a boat hook; she was not provided a demonstration on how to use a boat hook; and throughout her on-the-job training, the two trainers went in and out of the vehicle; at no time did they use a boat hook.

19) Both Ms. Hankins and Mr. Klein testified and there is no mention of boat hooks in the USPS's written training materials that were provided to Ms. Hankins. This is undisputed.

20) Ms. Hankins testified that she did not see a boat hook in the LLV on the day she was injured, nor did she specifically look for one. She testified even if there was a boat hook in the LLV, she likely would have needed to step onto the bumper of the LLV to reach a boat hook if one was available and typically stepped onto the bumper of the LLV to reach the strap to pull down the LLV door. She vaguely recalls seeing a small sign in the LLV stating to the effect of "Save Your Back, Use a Boat Hook," such that even if she had used a boat hook, it would not have prevented her leg injury because the boat hook was intended to prevent back injury. She testified even if there

was a boat hook, the boat hook would not have allowed her effectively to reach for mail that had fallen out of the mail trays during her drive.

21) At trial, OSHA Whistleblower Investigator Jared Klein, testified as follows: Mr. Klein works as a Whistleblower Investigator for OSHA, handling complaints filed in Region 9. Beginning in 2019, he investigated Ms. Hankins's section 11(c) complaint against USPS and found it meritorious. During his investigation, USPS admitted (1) it failed to evaluate Ms. Hankins using the Form 1750, at either the 30-day or 60-day timeframes; (2) there was no mention of the boat hook on any checklist of what an employee should report missing in their vehicle and thus Ms. Hankins would not have known to check if a boat hook was available in her LLV or report it is as missing. Mr. Klein also testified to the lack of corroborating notes or memoranda to support the termination, the lack of mention of boat hooks in the training materials USPS produced to him during his investigation, and the lack of written policies from the Corvallis or Monmouth post offices regarding the requirement to use boat hooks.

22) OSHA concluded USPS violated section 11(c) and the Secretary of Labor filed this action. (Stipulated Facts, Dkt. No. 34, p. 5)

23) Mr. Klein testified that during the same time period, he investigated a similar complaint filed by Macauley Guerrero against USPS. Mr. Guerrero alleged USPS retaliated against him while he was a probationary employee because he reported his workplace injury. Mr. Klein found Mr. Guerrero's complaint to be meritorious. Mr. Guerrero's complaint settled soon after the Secretary of Labor filed an action in the Northern District of California. Mr. Klein is aware of at least four additional, similar complaints that OSHA investigators have investigated in the Western Pacific Region since approximately January 1, 2019, in which OSHA found USPS violated section 11(c) by taking adverse actions against probationary employees who reported

workplace injuries. All four of these complaints led to the filing of federal enforcement actions in the Western District of Washington.

24) The Court granted the Acting Secretary's Request for Judicial Notice of these five lawsuits and the court records filed therein.[3] Dkt. No. __ (to be filed). The *Heath* case resolved after the Acting Secretary prevailed on her motion for summary judgment as to liability. The *Guerrero* case settled soon after filing and the other three (*Mithcell, Sweezer*, and *Jimenez*) are still pending.

25) Based on his experience and knowledge, Mr. Klein testified USPS has a pattern of retaliating against probationary employees who report workplace injuries.

26) Mr. Klein testified OSHA recommended seeking penalties in Ms. Hankins's case.

27) At trial, Ms. Hankins testified that as a result of her termination from USPS and the resulting ineligibility to be rehired at USPS, she suffered lost wages and out of pocket expenses relating to searching for employment.

28) Mr. Klein testified he calculated Ms. Hankins's lost wages and prepared a summary chart based on his review of her paystub at USPS and her paystubs from employment she found after her termination (interim pay).

29) At trial, Ms. Hankins testified she conducted a job search as soon as her doctors allowed her to work. She drove to different cities, including Sheridan and Salem, to look for work. She estimates spending approximately $50/week on mileage and gas during the time period April 30, 2019 through April 30, 2021.

---

[3] The Court took Judicial Notice of the court records in the following cases: (1) *Walsh v. U. S. Postal Serv. (Heath)*, 2023 WL 3172867 (W.D. Wash., May 1, 2023) (motion for summary judgment as to liability granted; USPS violated Section 11(c) by subjecting probationary employee to adverse actions for reporting workplace injury and filing a workers' compensation claim) (employee terminated approximately one month after reporting her workplace injury); (2) *Walsh v. USPS (Sweezer)*, No. 3:23-cv-05007, Dkt. No. 1, (W.D. Wash. filed Jan. 14, 2023) (complaint) (probationary USPS employee working at East Vancouver, Washington facility terminated the day after reporting workplace injury); (3) *Walsh v. USPS (Jimenez)*, No. 3:22-cv-6002, Dkt. No. 1, (W.D. Wash. filed Dec. 22, 2022) (complaint) (probationary USPS employee working at Tacoma, Washington facility terminated twelve days after reporting workplace injury); (4) *Walsh v. USPS (Mitchell)*, No. 2:22-cv-1176, Dkt. No. 1, (W.D. Wash. filed Aug. 23, 2022) (probationary employee working at Seattle, Washington facility terminated fourteen days after reporting workplace injury) and of *Walsh v. USPS (Guerrero)*, No. 3:21-cv-06808 (N.D. Cal.) (complaint filed on September 1, 2021.]

30) Ms. Hankins testified she experienced deep shame and loss of self-esteem at having been terminated from USPS for purportedly failing "to grasp the fundamental skills" and her "inability to meet the basic performance requirements" of the CCA job. She testified that she worked hard as a CCA during the hectic November through January time period, performed every assigned task to the best of her ability, received positive feedback, went where USPS sent her to work, and was shocked to find out USPS fired her, with no warning, after she reported her injury. Ms. Hankins is someone who has worked throughout her life starting when she was a teenager, and prided herself on being able to care for herself and her family and having an "I can do this" attitude. After her termination, she felt guilty that she was not able to contribute as much financially to the everyday needs of her household or to provide health coverage to her wife and children. She developed loss of enjoyment of activities that she previously enjoyed, such as playing board games with her family. She became moody and internalized negative feelings. She experienced bouts of feeling worthless.

31) At trial, Ms. Hankins's wife, Kendra Hankins and her mother, Kathleen Hankins corroborated Ms. Hankins's testimony concerning her distress at being terminated from USPS and her upset upon learning she was ineligible for rehire.

### III.  CONCLUSIONS OF LAW

#### A.  USPS Violated Section 11(c) of the Act

The Occupational Safety and Health Act, as safety legislation, is remedial and preventative in nature and is to liberally construed to effectuate congressional purpose. *Perez v. U.S. Postal Service*, 76 F.Supp.3d 1168, 1182 (W.D. Wash. 2015) (citations omitted). Section 11(c) of the Act furthers the public interest in ensuring safe and healthful workplaces by prohibiting retaliation against employees who engage in protected activity under the Act. It states:

> No person shall discharge or in any manner discriminate against any

> employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

29 U.S.C. § 660(c)(1). The prohibition against discrimination explicitly includes "discriminating against an employee for reporting a work-related … injury, or illness." 29 C.F.R. § 1904.36. The regulations provide that employers should not "deter or discourage a reasonable employee from accurately reporting a workplace injury or illness." 29 C.F.R. § 1904.35; see also *Su v. U. S. Postal Serv.* (*Heath*), Case No. 3:22-cv-5180, 2023 WL 3172867 (W.D. Wash., May 1, 2023) (finding USPS violated probationary employee's Section 11(c) rights when it subjected her to adverse actions because she reported a workplace injury and filed a workers' compensation claim). Thus, Section 11(c) of the Act prohibits retaliation against employees who report workplace injuries.

To prevail on a claim under Section 11(c), the plaintiff must prove by a preponderance of the evidence that: (1) the employee participated in protected activity, (2) the employer subsequently subjected the employee to an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action. *Perez*, 76 F. Supp. 3d at 1183. A causal link between a protected activity and an adverse employment action can "be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011).

Once the plaintiff has established a *prima facie* case of retaliation, the burden shifts to the employer to "articulate a legitimate nondiscriminatory [or nonretaliatory] reason for its actions." *Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548, 549 (8th Cir. 1993) (internal quotation and citations omitted). If the employer satisfies that burden, the plaintiff must prove that the proffered reason is pretextual. *Id.* See also *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1022 (9th Cir. 2018). The plaintiff may show pretext "directly by persuading the court that a retaliatory reason more likely motivated the employer or indirectly by

showing that the employer's proffered explanation is unworthy of credence." *Id.*

The Court finds Ms. Hankins engaged in a protected activity when she reported her workplace injury to USPS. The Court finds USPS's termination of Ms. Hankins constitutes an adverse action. Indeed, USPS stipulates to these facts.

The Court further finds that the Acting Secretary has established, by a preponderance of the evidence, that USPS discriminated against Cassandra Hankins because she reported her workplace injury. Ample evidence supports the existence of a causal connection between the protected activity and the adverse action.

First, it is undisputed that USPS terminated Ms. Hankins within 21 days of her protected activity and just eleven days before her probationary period would have ended. See *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir.2002) ("causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity").

Second, there is evidence of USPS's hostility towards probationary employees who report workplace injuries: former Manager Martin testified she would tell new employees they would most likely be fired if they had a vehicular accident or injury accident during their probation and that she had essentially been mentored to do take such actions. Postmaster McCormick testified when she spoke with Martin about Ms. Hankins and the planned termination, Martin told her Ms. Hankins had a workplace injury. Lastly, the Acting Secretary presented background evidence demonstrating USPS's pattern of discriminating against probationary employees who report workplace injuries. Since January 1, 2019, OSHA has investigated at least five other similar complaints against USPS in the Western Pacific Region and found them to have merit. Each complaint led to enforcement actions in federal court.

Third, the Court finds that USPS's reason for the termination—that Ms. Hankins failed to use a boat hook--is a pretext for discrimination. USPS failed to prove there was a boat hook in the vehicle Ms. Hankins drove on the day of her injury. Ms. Hankins testified

she did not see one. Martin's putative testimony that a supervisor told her there was a boat hook constitutes inadmissible hearsay, and even if such statement was admissible for the truth, it is far from persuasive because that call to the supervisor in Corvallis purportedly took place weeks after Ms. Hankins suffered her injury and not immediately after her injury. There is a lack of evidence concerning who drove the vehicle during the interim period and whether anyone placed or replaced a boat hook in the vehicle. Second, Ms. Hankins testified that even if there was a boat hook in the LLV, she likely would have needed to step onto the bumper of the LLV for a number of reasons in any event. Both Ms. Hankins and Mr. Klein testified that boat hooks were supposedly intended to prevent back injuries and was not intended to prevent a leg injury.

More importantly, even if there was a boat hook in the vehicle, Postmaster McCormick testified failure to use a boat hook was not a terminable offense. Ample evidence corroborates this testimony. If using a boat hook was a so important, one would expect USPS to include this information in its written training materials, including its training checklist, and to train new employees on how and when to use a boat hook. Yet USPS presented no such evidence. Ms. Hankins testified at no time did her two on-the-job trainers use a boat hook themselves during the three-day training or demonstrate how to use a boat hook; instead the trainers went in and out of the vehicle during the training.

Additionally, one would expect USPS to have notified Ms. Hankins that she must use a boat hook. It is undisputed that she received no such warning or any discipline before she reported her injury. See *Little v. Technical Specialty Products LLC*, 2014 WL 1116895 at *4 (E.D. Tex. Mar. 18, 2014) (plaintiff's evidence that he was not informed of performance problems prior to termination supported finding of pretext in FLSA retaliation case).

Next, the Court finds USPS failed to prove it would have terminated Ms. Hankins in the absence of her protected activity. See *Su v. USPS* (*Heath*), 2023 WL 3172867 *6 (order on Acting Secretary's motion for summary judgment; finding USPS failed to show that it

would have fired Ms. Heath absent her reporting of her injury). Again, Postmaster McCormick testified failure to use a boat hook is not egregious and is not a terminable offense. McCormick has not terminated any employee for failure to use a boat hook. Contrary to its own policy, USPS failed to evaluate Ms. Hankins using its Form 1750 at the 30-day or 60-day time frame and therefore provided no notice or warning of any performance issues, in violation of USPS's policy of providing employees an opportunity to learn of what they need to improve and an opportunity to improve. (Exhibit C, deposition testimony of 30(b)(6) witness Amy Bennett) USPS also failed to train Ms. Hankins on how and when to use a boat hook. It is undisputed that Ms. Hankins received positive feedback on her work performance.

The Court finds USPS violated Section 11(c) of the Act.

### B. The Acting Secretary's Request for Injunctive Relief is Granted

#### i. The Acting Secretary is entitled to a permanent injunction prohibiting USPS from violating Section 11(c) of the Act and requiring USPS to take steps to ensure violations do not reoccur

Having reviewed the parties' briefing on the issue of scope of injunctive relief, the Court hereby grants the Acting Secretary's request for a permanent injunction covering the state of Oregon. Section 11(c) primarily serves a public purpose:

> OSHA Section 11(c) provides for individual relief such as reinstatement with back pay. While remedial, this provision operates primarily toward furthering the public statutory goals. 'The fact that these proceedings operate to confer an incidental benefit on private persons does not detract from this public purpose.'
> ….
> The public nature of these individual remedies is emphasized by the fact that the government alone possesses the right to bring suit under Section 11(c).

*Donovan v. Square D Co.,* 709 F.2d 335, 338-39 (5th Cir. 1983) (footnotes and citations omitted).

The Acting Secretary's "interests in determining the legality of specific conduct and in deterring future violations are distinct from the employee's interest in a personal remedy."

[PLF'S SUGGESTED] Findings of Fact & Conclusions of Law    14

*E.E.O.C. v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1542 (9th Cir. 1987) (addressing EEOC's right to seek injunctive relief to protect employees as a class and deter future unlawful conduct). The Acting Secretary's role in enforcing the public purpose of the Act entitles the Acting Secretary to "class-action type relief" to enjoin any defendant from future discrimination against employees similarly situated to Ms. Hankins. *Id*. at 1543 (citing *General Tel. Co. v. EEOC*, 446 U.S. 318, 333-34 (1980)). See also *Brennan v. J.M. Fields, Inc.*, 488 F.2d 443, 449-50 (5th Cir. 1973), cert. denied, 419 U.S. 881 (1974) (finding a corporate wide injunction appropriate on the basis of a single investigation because "[i]t would frustrate the broad purposes of the FLSA in suits involving large corporate defendants with extensive branch operations to require the Secretary to investigate and prove violations in all or substantially all of the defendant's branches to justify the issuance of a chain-wide injunction").

Because the scope of injunctive relief must generally be tailored to provide complete relief to the plaintiff, the Acting Secretary's request for injunctive relief appropriately reaches beyond just Ms. Hankins to protect all of USPS's employees in the state of Oregon.

### ii. Cassandra Hankins is Entitled to Expungement of her Employment Record and Notation that She is Eligible for Rehire

As discussed above, the Court has broad equitable powers to remedy wrongs, which in the appropriate case may include such relief as reinstatement or expunging negative employment references. See generally *Reich v. Cambridgeport Air Sys., Inc.*, 26 F.3d 1187, 1191 (1st Cir. 1994) (all appropriate relief in Section 11(c) "embraces monetary damages as well as other relevant forms of relief normally available."); *Perez,* 76 F. Supp.3d at 1195 (holding that expungement of personnel record is "appropriate relief" under Section 11(c)). The Court finds it is appropriate in this case to order USPS to purge all negative information contained in its electronic or physical files that reference Ms. Hankins's termination, the

reasons USPS purported relied on, and any impediment to her eligibility for rehire in the future. The Court orders USPS to affirmatively state in Ms. Hankins's personnel file that she is eligible for rehire.

### C. Cassandra Hankins is Entitled to Economic and Non-Economic Damages

Based on the foregoing, the Court finds that Ms. Hankins is entitled to economic and non-economic damages from USPS under Section 11(c). See *Perez*, 76 F. Supp. 3d 1168, 1193-94.

Ms. Hankins testified to the emotional distress USPS caused her when it fired her for reporting her workplace injury. She testified to her additional distress upon learning she was ineligible for rehire. Her wife corroborated that testimony. The Court finds that Ms. Hankins suffered significant emotional distress and awards emotional distress damages in the amount of $100,000. See e.g. *Perez*, 76 F.Supp.3d at 1194 (awarding $150,000 in emotional distress damages); *Goddard v. DHL* Exp. (USA), Inc., 357 F. App'x 80, 82 (9th Cir. 2009) (Title VII retaliation, approving of an assumed $240,000 emotional distress damages award on the basis that the plaintiff testified that the retaliation she suffered was consuming and affected her personal life, and that testimony was corroborated by her supervisor); see also *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1041 (9th Cir. 2003) (§1981claim, upholding up to $223,000 in emotional distress damages on the basis of testimony by the plaintiff that the job had started as his dream job, and as a result of the retaliation, his dignity was harmed).

The Act provides that a court may "order all appropriate relief" including back pay. 29 U.S.C. § 660(c)(2). See *Donovan v. Commercial Sewing, Inc.*, 562 F. Supp. 548 (D. Conn. 1982). "[A]ll appropriate relief" includes the full range of civil remedies traditionally available to courts. *Cambridgeport*, 26 F.3d at 1192. Mr. Klein testified to the calculation of back pay, including his deduction of Ms. Hankins's interim wages. The Court finds the back pay claimed in the amount of $86,107.50, from June 30, 2020 through and including February 29, 2024 is reasonable and justified.

Further, the Court finds it is appropriate to award Ms. Hankins the costs of her job search. She testified to spending approximately $50 a week on gas and mileage during the period April 30, 2019 through April 30, 2021 related to her job search. This amount is reasonable based on the IRS reimbursement rate for mileage, the average gasoline costs during the time period, and Ms. Hankins's testimony about her job search. See *Marshall v. P&Z Co., Inc.*, 1978 WL 17187 *5 (D.D.C. 1978) aff'd sub nom. *Marshall v. P & Z Co., Inc.*, 600 F.2d 280 (D.C. Cir. 1979) (awarding travel costs incurred in finding a new job for a violation of Section 11(c)).

### D. The Acting Secretary's Request for Punitive Damages is Granted

Based on the stipulated facts, judicially noticed facts, the undisputed facts, and the Court's factual findings based on the evidence presented at trial, the Court finds that USPS was well aware that terminating an employee for reporting a workplace injury violates Section 11(c) of the Act. This awareness did not stop USPS from terminating Ms. Hankins for reporting her workplace injury. As a result, I find USPS acted with reckless indifference to Ms. Hankins's rights under the Act and is therefore liable for punitive damages.

The leading case recognizing the availability of compensatory and punitive damages in section 11(c) cases is *Reich v. Cambridgeport Air Systems, Inc.*, 26 F.3d 1187 (1st Cir. 1994). There, the First Circuit relied on the Supreme Court's decision in *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992), which announced "'[t]he general rule ... that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute.'" *Cambridgeport*, 26 F.3d at 1191. The court thus concluded that section 1 l(c)'s broad language permitting "all appropriate relief" empowers federal courts to award compensatory and punitive damages "in a cause of action analogous to an intentional tort ... where such relief is in fact appropriate." *Id.* at 1194 (doubling back pay as punitive damages). The Department the of Labor has obtained punitive damages in subsequent Section 1 l(c) cases. See e.g. *Perez v. Clearwater Paper*

*Corp.*, 184 F. Supp. 3d 831 (D. Idaho 2016) (awarding more than $76,000 in punitive damages); *Perez v. Sandpoint Gas N Go & Lube Ctrs, Inc.,* Case No. 14-CV-00357-BLW, 2015 WL 10889991 (D. Idaho 2015) (awarding $100,000 in punitive damages); *Reich v. Skyline Terrace, Inc.*, 977 F. Supp. 1141, 1147 (N.D. Okla. 1997) (awarding $5,000 in punitive damages).

The Court determines that punitive damages in an amount equal to the compensatory damages awarded above is appropriate and justified to ensure that USPS takes notice of its culture of discriminating against probationary employees who report workplace injuries and is deterred from continuing this unlawful practice.

## IV.    CONCLUSION

Having fully considered the evidence presented at trial, the exhibits admitted into evidence, and the argument of counsel, the Court finds in favor of the Acting Secretary as discussed herein.

DATED this 11th day of March 2024.         Respectfully submitted,

                                                  /s/Doris Y. Ng
                                         Doris Y. Ng, CA Bar No. 169544
                                         Trial Attorney
                                         UNITED STATES DEPARTMENT OF LABOR