MARC A. PILOTIN
Regional Solicitor
JESSICA M. FLORES
Counsel for Civil Rights
DORIS Y. NG (California Bar No. 169544)
Trial Attorney
Office of the Solicitor
UNITED STATES DEPARTMENT OF LABOR
90 7th Street Suite 3-700
San Francisco California 94103
Telephone: 415-625-2224
Ng.doris.y@dol.gov
*Attorneys for Plaintiff Julie A. Su, Acting Secretary of Labor*
*United States Department of Labor*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JULIE A. SU, <br><br>Acting Secretary of Labor,<br>United States Department of Labor,<br><br>　　　　　　　　　　Plaintiff,<br>v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>　　　　　　　　　　Defendant. | Case No. NO. 3:21-CV-01454-AN<br><br>**THE ACTING SECRETARY'S MOTIONS IN LIMINE TO: (1) ADMIT EVIDENCE OF SIMILAR OSHA COMPLAINTS FILED AGAINST USPS; (2) EXCLUDE IRRELEVANT EVIDENCE PERTAINING TO BOAT HOOKS; (3) EXCLUDE EVIDENCE OF MS. HANKINS'S EEO CLAIM; MEMORANDA IN SUPPORT OF MOTIONS**<br><br>Pretrial Conference Date: April 9, 2024<br>Trial Date: April 22, 2024<br>Request for Oral Argument |

　　　In compliance with Local Rule 7-1, Plaintiff certifies that she met and conferred in good faith with counsel for Defendant about the subject of the following motions in limine but was unable to reach agreement.

PLAINTIFF'S MOTIONS IN LIMINE; MEMORANDA ISO MOTIONS　　　　　　　　　　1

Plaintiff Acting Secretary of Labor Julie A. Su filed this Action alleging Defendant USPS violated section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. §§ 651, *et seq.* ("the Act") when it terminated Cassandra Hankins ("Complainant" or "Ms. Hankins") while she was on probation because she reported her workplace injury to USPS. USPS concedes: (1) Ms. Hankins engaged in a protected activity when she reported her injury, (2) USPS had knowledge of her protected activity, and (3) USPS's termination of Ms. Hankins was an adverse action. The only questions for trial are whether Ms. Hankins's protected activity caused her termination, any damages USPS owes Ms. Hankins, including punitive damages, and what injunctive relief is appropriate.

## I. PLAINTIFF'S MOTIONS IN LIMINE

The Acting Secretary moves to proffer evidence that demonstrates USPS's hostility towards probationary employees who report workplace injuries. In the Western Pacific Region alone, there are at least five complaints in addition to the instant case that the United States Department of Labor, Occupational Safety and Health Administration (OSHA) received, investigated, and found USPS took adverse actions against probationary employees for reporting a workplace injuries, since approximately January 1, 2019. Thereafter, the Acting Secretary of Labor filed numerous enforcement actions in federal court. Such evidence shows USPS's retaliatory attitude towards probationary employees who were expecting to start their career with USPS but were instead terminated for reporting their workplace injuries. This evidence further supports the Acting Secretary's request for injunctive relief and punitive damages. *See* Plaintiff's Request for Judicial Notice, filed concurrently.

Next, the Acting Secretary moves for an order excluding irrelevant evidence or reference to such evidence mentioning boat hooks, including documents that USPS never provided to Ms. Hankins and unauthenticated photographs of LLVs. *See* Plaintiff's Objections to Defendant's Proffered Exhibits, filed concurrently.

Last, the Acting Secretary moves to exclude evidence from or reference to Ms. Hankins's Equal Employment Opportunity (EEO) discrimination claim against USPS and any proceedings therein on the grounds that such evidence is irrelevant and substantially more prejudicial than probative. *See* Plaintiff's Objections to Defendant's Proffered Exhibits, Objections to Defendant's Witness Statements, and Objections to Defendant's Deposition Designations, all filed concurrently.

## II.     SUMMARY OF FACTS RELEVANT TO THE MOTIONS

Ms. Hankins began work as a City Carrier Assistant (CCA) for USPS on November 10, 2018, with a probationary period of 90 days, which would have ended on February 8, 2019. (Stipulated Facts, Dkt. No. 34, p. 2) Ms. Hankins's supervisor was Postmaster Melissa McCormick ("McCormick"). On January 7, 2019, Ms. Hankins injured the back of her left knee when she stepped onto the back of her USPS vehicle to unload mail. Ms. Hankins reported her injury to USPS that same day. Her doctors took her off work until approximately February 12, 2019.

On January 25, 2019, Ms. Hankins was called in for an investigative interview. The manager who conducted the interview, then-Postmaster of the Dallas, Oregon facility, Deborah Martin ("Martin"), harbored animus against probationary employees who reported workplace injuries—she admitted regularly informing new hires if they had a vehicle accident or an injury accident during their probationary period, they would likely be terminated and that she was essentially mentored on this practice. (Martin Depo. Tr. at 42:17-44:8; 46:3-17) During the interview, Martin asked Ms. Hankins whether there was a boat hook in the Long Life Vehicle (LLV) Ms. Hankins drove. Ms. Hankins responded "No." (Stipulated Facts, Dkt. No. 34, pps. 3-4) At trial, Ms. Hankins will testify that she did not see a boat hook in the LLV that day. She will also testify to several reasons why, even if there was a boat hook in the LLV, she would have had to step onto the bumper anyway.

McCormick will testify Martin made the decision to terminate Ms. Hankins and

1  Martin told McCormick to sign the termination letter "as soon as possible" upon
2  McCormick's return from leave. McCormick signed the letter after a brief conversation
3  wherein Martin told her Ms. Hankins had been injured. Martin in turn denied that she wrote
4  the termination letter or that she was the decisionmaker. (Martin Depo. Tr. at 23:6-7; 33:8-
5  22.) Martin testified she spoke with Jami Goodpastor [Manager of Post Office Operations]
6  ("Goodpastor") after the investigative interview. (Stipulated Facts, Dkt. No. 34, p. 5) Martin
7  told Goodpastor there was a boat hook in the vehicle, but Ms. Hankins did not use it;
8  Goodpastor hastily concluded Ms. Hankins did not perform her job in a safe manner; and a
9  decision was made to terminate Ms. Hankins. (Martin Depo. Tr. at 36: 21-25; 54:2-5)

10        On January 28, 2019, USPS issued a Notice of Separation to Ms. Hankins. Ms.
11  Hankins was terminated for failure to use a boat hook. (Stipulated Facts, Dkt. No. 34, p. 4;
12  Martin Depo. Tr. at 36:21-25)

13        It is undisputed that Ms. Hankins had been doing a good job before she was
14  terminated. USPS concedes its policy was to formally evaluate probationary employees at
15  the 30-day, 60-day, and 80-day timeframes using Form 1750, which documents work
16  expectations and provides probationary employees with an opportunity to address any
17  performance issues. (Stipulated Facts, Dkt. No. 34, p. 2-3; Amy Bennett Depo. Tr. at 10-11;
18  16-17; 19:14-25; 22-29; Exhibit 9) And yet, at no time did USPS evaluate Ms. Hankins or
19  inform her that she could be disciplined, including up to termination, for failing to use a boat
20  hook.

21        Moreover, USPS failed to provide training on the use of boat hooks. Ms. Hankins did
22  not receive training about where she might find a boat hook, if one was available, or how to
23  retrieve, use, and re-attach a boat hook. Throughout her on-the-job training, her two trainers
24  never used a boat hook. The written training materials contain no mention of boat hooks.

25        Most importantly, even if there was a boat hook in the LLV, McCormick will testify
26  that *failure to use a boat hook is not egregious and is not a terminable offense* and she has
27  never terminated an employee for failing to use a boat hook.

28

PLAINTIFF'S MOTIONS IN LIMINE; MEMORANDA ISO MOTIONS       4

OSHA Whistleblower Investigator Jared Klein ("Klein") will testify that during his investigation of Ms. Hankins's complaint, USPS admitted there was no mention of the boat hook on any checklist of what an employee should report missing in their vehicle and thus Ms. Hankins would not have known to check for a boat hook. Klein will also testify that his investigation revealed USPS lacked documentation to support Ms. Hankins's termination.

The Acting Secretary will offer Klein's testimony that during the same time period, he investigated a similar complaint wherein Macauley Guerrero alleged USPS retaliated against him while he was a probationary employee because he reported his workplace injury. Klein found the complaint meritorious and the case settled after the Secretary of Labor filed an enforcement action. Investigator Klein is aware of numerous, similar complaints that OSHA investigators have investigated in his region since approximately January 1, 2019, in which OSHA found USPS violated section 11(c) by terminating probationary employees for reporting their workplace injuries, including one case where a district court held on summary judgment that USPS violated 11(c). The Acting Secretary concurrently files a Request for Judicial Notice of these federal cases and the court records therein.[1] Investigator Klein will testify USPS has a practice of retaliating against probationary employees who report workplace injuries.

### III. THE ACTING SECRETARY MUST PROVE USPS TERMINATED MS. HANKINS BECAUSE OF HER PROTECTED ACTIVITY AND THAT SHE IS ENTITLED TO RELIEF

The Acting Secretary must prove a causal connection between Ms. Hankins's reporting her workplace injury and her termination. She must also demonstrate she is

---

[1] The court cases are: (1) *Su v. U. S. Postal Serv. (Heath)*, 2023 WL 3172867 (W.D. Wash., May 1, 2023) (motion for summary judgment as to liability granted); (2) *Su v. USPS (Sweezer)*, No. 3:23-cv-0500, 2024 WL 21670 (W.D. Wash., Jan. 2, 2024) (ordering negative inferences against USPS regarding the reasons for termination); (3) *Walsh v. USPS (Jimenez)*, No. 3:22-cv-6002 (W.D. Wash. filed Dec. 22, 2022) (probationary employee terminated twelve days after reporting injury); (4) *Walsh v. USPS (Mitchell)*, No. 2:22-cv-1176 (W.D. Wash. filed Aug. 23, 2022) (probationary employee terminated fourteen days after reporting injury) and (5) *Walsh v. USPS (Guerrero)*, No. 3:21-cv-06808 (N.D. Cal.) (complaint filed on September 1, 2021).

1  entitled to the relief she seeks, including injunctive relief and punitive damages.

2        As background, the Act, as safety legislation, is remedial and preventative in nature
3  and must be liberally construed to effectuate its purpose. *Perez v. U.S. Postal Service*, 76 F.
4  Supp. 3d 1168, 1182 (W.D. Wash. 2015) (citations omitted). Section 11(c) of the Act
5  furthers the public interest in ensuring safe and healthful workplaces by prohibiting
6  retaliation against employees who engage in protected activity under the Act. 29 U.S.C. §
7  660(c)(1) ("Section 11(c)"). The prohibition against discrimination includes "discriminating
8  against an employee for reporting a work-related … injury, or illness." 29 C.F.R. § 1904.36.
9  The regulations provide that employers should not "deter or discourage a reasonable
10 employee from accurately reporting a workplace injury or illness." 29 C.F.R. § 1904.35; *see*
11 *also Su v. U. S. Postal Serv.* (*Heath*), No. 3:22-cv-5180, 2023 WL 3172867 (W.D. Wash.,
12 May 1, 2023) (USPS violated Section 11(c) when it subjected probationary employee to
13 adverse actions because she reported an injury and filed a workers' compensation claim).

14       To prevail on a Section 11(c) claim, the plaintiff must prove that the employee
15 participated in protected activity, the employer subsequently subjected the employee to an
16 adverse employment action, and a causal connection exists between the protected activity
17 and the adverse action. *Perez*, 76 F. Supp. 3d at 1183. A causal link between a protected
18 activity and an adverse action can "be inferred from circumstantial evidence such as the
19 employer's knowledge of the protected activities and the proximity in time between the
20 protected activity and the adverse action." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th
21 Cir. 2011). Once the plaintiff has established a *prima facie* case of retaliation, the burden
22 shifts to the employer to "articulate a legitimate nondiscriminatory [or nonretaliatory] reason
23 for its actions." *Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548, 549 (8th Cir. 1993)
24 (internal quotations and citations omitted). If the employer satisfies that burden, the plaintiff
25 must prove that the proffered reason is pretextual. *Campbell v. Hawaii Dep't of Educ.*, 892
26 F.3d 1005, 1022 (9th Cir. 2018). The plaintiff may show pretext "directly by persuading the
27 court that a retaliatory reason more likely motivated the employer or indirectly by showing

28

PLAINTIFF'S MOTIONS IN LIMINE; MEMORANDA ISO MOTIONS        6

that the employer's proffered explanation is unworthy of credence." *Id*; *Perez v. Clearwater Paper Corp.*, 184 F. Supp. 3d 831, 842 (D. Idaho 2016).

Here, the causal connection between Ms. Hankins's report of her workplace injury and her termination include USPS's: hasty and unsupported investigation into Ms. Hankins's injury, animus towards employees who report workplace injuries during probation, failure to follow its own policies, management testimony that the proffered reason for terminating Ms. Hankins was not a terminable offense, lack of corroborating evidence to support its termination, and the temporal proximity between Ms. Hankins's protected activity and USPS's adverse action. This evidence also demonstrates pretext.

The Acting Secretary seeks "all appropriate relief," including a permanent injunction and punitive damages. Dkt. No. 1 at 3:19. The Acting Secretary seeks a permanent, nationwide injunction prohibiting USPS from violating Section 11(c), requiring training and posting of notices, and requiring use of Form 1750 to evaluate all probationary employees. *See, e.g.*, *Su*, 2023 WL 3172867, *7 (ordering a permanent injunction for all of Tacoma, Washington; finding "USPS . . . blatantly violated Section 11(c) . . . , demonstrating an open disregard for the requirements of the statute"). The requested injunction seeks to protect USPS's employees in all of its facilities because the policies at issue (e.g., use of Form 1750 to evaluate probationary employees) are established nationally. The Acting Secretary will present evidence that both a high-level Manager of Post Office Operations in Oregon and a Postmaster whom USPS mentored to act with retaliatory animus and who served as a manager in post offices in Oregon and Florida, terminated Ms. Hankins.

The Acting Secretary also seeks an award of punitive damages based on the evidence that will be presented at trial and all reasonable inferences drawn from such evidence. Punitive damages are appropriate where an employer acts with "reckless or callous indifference" to one's "federally protected rights." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 548-49 (1999); *see also Acosta v. Fairmont Foundry, Inc.*, 391 F. Supp. 3d 395, 407 (E.D. Pa. 2019) (recklessness and malice to support a punitive damages award may be

PLAINTIFF'S MOTIONS IN LIMINE; MEMORANDA ISO MOTIONS                    7

inferred from the facts). This standard is met, for instance, where an employer "'discriminate[s] in the face of a perceived risk that its actions will violate federal law.'" *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 515 (9th Cir. 2000) (quoting *Kolstad*). Punitive damages may be awarded to "compensate the complainant for harm suffered and deter future violations." *Clearwater*, 184 F. Supp. 3d at 843.

Here, evidence that two high-level managers rushed to terminate Ms. Hankins on the weak pretext that she failed to use a boat hook, where failure to use a boat hook was not a terminable offense, supports a reasonable inference that USPS acted with reckless indifference to Ms. Hankins's rights and to discourage others from reporting their workplace injuries. *See, e.g.*, *Clearwater*, 184 F. Supp. 3d at 844 (punitive damages awarded against employer who terminated employee to chill others from reporting safety violations).

## IV.  LEGAL ARGUMENT

### A.  The Court Has Inherent Authority to Rule in Advance to Admit or Exclude Evidence

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in a particular area. In the case of a jury trial, a court's ruling 'at the outset' gives counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury." *U.S. v. Heller*, 551 F.3d 1108, 1111-1112 (9th Cir. 2009) (citation omitted). "Motions in limine are designed to avoid the delay . . . caused by objections and offers of proof at trial." *Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999). Such motions are "useful tools to resolve issues which would otherwise 'clutter up' the trial." *Palmerin v. City of Riverside*, 794 F.2d 1409, 1413 (9th Cir. 1986).

Only relevant evidence is admissible. Evidence is relevant only if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that is not relevant to a fact that is of consequence to the trial is inadmissible. Fed. R. Evid. 402.

B. **Evidence of At Least Five Similar, Meritorious OSHA Complaints Filed Against USPS in the Western Pacific Region Is Relevant to Show USPS's Unlawful Motivation and Blatant Disregard for Employees' Rights Under the Act**

As discussed above, the Acting Secretary must prove USPS terminated Ms. Hankins because she reported her workplace injury. Due to the difficulty of proving an employer's motivation or intent, courts have frequently admitted circumstantial evidence or background evidence tending to show that, more likely than not, the employer had an unlawful motive. *See, e.g., Heyne v. Caruso*, 69 F.3d 1475, 1479-80 (9th Cir. 1995) (district court erred by excluding evidence that the employer sexually harassed other female employees; such evidence was relevant to prove the employer's reason for terminating plaintiff was pretextual). As the Ninth Circuit explained:

> It is clear that an employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason behind firing an employee who is a member of that group. . . .Recognizing that there will seldom be "eyewitness testimony as to the employer's mental processes, the Supreme Court held that evidence of the employer's discriminatory attitude *in general* is relevant and admissible to prove race discrimination.

*Heyne*, 69 F.3d at 1479-80 (internal quotations and citations omitted) (emphasis in the original).

In *Hawkins v. Hennepin Technical Center*, 900 F.2d 153, 154 (8th Cir.), *cert. denied*, 498 U.S. 854 (1990), the Eighth Circuit reversed the exclusion, on relevancy grounds, of evidence of alleged acts of sexual harassment committed against the plaintiff and other employees. The *Hawkins* court concluded the evidence was relevant to the employee's gender discrimination and retaliatory discharge suit, reasoning "[b]ecause an employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination, this evidence should normally be freely admitted at trial." *Id*. at 155–56.

Numerous courts have applied this rationale to a variety of employment discrimination claims. *See, e.g.*, *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1102 (8th Cir.1988) (in a suit alleging age and race discrimination, the appellate court found the district court abused its discretion to exclude, on relevancy grounds, "evidence which tended to show a climate of race and age bias at [defendant's company]"); *Phillip v. ANR Freight Systems, Inc.*, 945 F.2d 1054 (8th Cir. 1991) (reversing exclusion of evidence of other age discrimination lawsuits filed against the employer).

As these cases demonstrate, an employer's background of discrimination or retaliation is relevant to proving whether the employer was more likely than not to have acted from an unlawful motive. Here, the Acting Secretary proffers evidence of at least five other complaints by probationary employees who suffered adverse actions soon after reporting workplace injuries that OSHA investigated and concluded USPS violated section 11(c). OSHA investigated these complaints during the same time period as Ms. Hankins's complaint and they were filed in the same Western Pacific Region. In one of these cases, the district court granted the Acting Secretary's summary judgment motion as to liability. This evidence constitutes relevant background evidence of USPS's general hostility towards probationary employees who report workplace injuries and that its reason for terminating Ms. Hankins is likely pretextual.[2]

The proffered evidence is also relevant to demonstrating that USPS likely acted with an unlawful motive and reckless disregard for its employees' Section 11(c) rights, thus warranting an award of punitive damages. USPS has shown a pattern of terminating probationary employees who report workplace injuries. Together with evidence that USPS rushed to terminate Ms. Hankins after she reported her workplace injury, using the pretext

---

[2] *See* Maryam Jameel, *The Postal Service Fired Thousands of Workers for Getting Injured While Delivering and Processing Your Mail*, ProPublica, February 24, 2020 (citing U.S. Department of Labor facts in investigative report about USPS's widespread practice of terminating employees who have been injured on the job); available at https://www.propublica.org/article/the-postal-service-fired-thousands-of-workers-for-getting-injured-while-delivering-and-processing-your-mail.

PLAINTIFF'S MOTIONS IN LIMINE; MEMORANDA ISO MOTIONS          10

that she did not use a boat hook to retrieve mail trays—an offense, which even if true, Postmaster McCormick testified would *not* justify termination—the proffered background evidence shows that, more likely than not, USPS was aware it would violate the law if it terminated Ms. Hankins for reporting her workplace injury, but proceeded to do so anyway. Likewise, such evidence is relevant to the scope of any permanent injunction the Court may consider to deter future violations.

### C. The Court Should Exclude Irrelevant Evidence About Boat Hooks

Plaintiff moves to exclude any testimony or documentary evidence about boat hooks that was not provided to or shared with Ms. Hankins on the grounds of lack of foundation and lack of relevance. *See* Plaintiff's Objections to Defendant's Witness Testimony and Objections to Defendant's Proffered Exhibits, filed concurrently. In addition to the requirement of relevance cited above, admissible evidence must be authenticated by a person with personal knowledge. Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); Fed. R. Evid. 901 ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").

USPS proposes to offer the following testimony:

> PM McCormick will testify that boat hooks have been used in Postal Long Life Vehicles (LLVs) for more than ten (10) years. She will testify that the use of boat hooks by carriers and city carrier assistants ("CCAs") has been pushed "hard and heavy" by the Safety Department in the Portland District. . . .
>
> PM Martin will testify that boat hooks had been available for use by postal carries and CCAs in the Oregon area since at least 2018 or so . . . .

(Dkt. No. 47) These witnesses lack personal knowledge for the proposed generalized testimony; instead, their putative testimony is based on hearsay (e.g., "use of boat . . . has

PLAINTIFF'S MOTIONS IN LIMINE; MEMORANDA ISO MOTIONS　　　11

been pushed 'hard and heavy' by the Safety Department. . . ."). Moreover, the proposed testimony is irrelevant to any fact at issue. Even assuming the truth of these general statements—that boat hooks have been in use—that does not matter because (1) USPS failed to train Ms. Hankins about where to find a boat hook, or how and when to use a boat hook; (2) USPS failed to inform Ms. Hankins of the alleged requirement to use a boat hook at the Corvallis, Oregon facility or to look for a boat hook as part of a checklist of items; (3) USPS failed to warn Ms. Hankins that failure to use a boat hook violated a safety rule, which could subject her to discipline and even termination; (4) failing to use a boat hook is not a terminable offense; and (5) USPS cannot prove there was a boat hook in Ms. Hankins's LLV on the date of her injury. *See* Plaintiff's Objections to Defendant's Witness Statements, filed concurrently. The Court should exclude the proffered testimony.

Likewise, USPS proposes to offer Exhibits 503 through 506, consisting of photographs and various documents relating to boat hooks. (Dkt. No. 46) *See* Plaintiff's Objections to Defendant's Proffered Exhibits, filed concurrently. Exhibits 503 through 505 purport to be photographs of various LLVs. However, these photographs lack foundation and are irrelevant. USPS fails to offer evidence from a witness with personal knowledge to authenticate the photographs. Martin Depo. Tr. 35:12-16 (". . . I don't—they took a picture, but I don't know if it's the right vehicle because I don't know what she drove that day.") These photographs should also be excluded because they are substantially more prejudicial than probative in view of their inherent suggestibility and lack of authentication. Moreover, Exhibit 504 was never produced or disclosed to Plaintiff and must be excluded for this reason as well. (Dkt. No. 34 at 8 (Joint Pretrial Order (adopted by the Court)).

Exhibit 506 purports to be a hodgepodge of various documents that mention a boat hook: some documents contain a date somewhere in the document, others do not; several appear to have been prepared by the union representing letter carriers and are titled: "A Good Idea"; many are missing locations and have incomplete information. These documents are inadmissible on the grounds of lack of foundation, hearsay, lack of relevance, and because they are substantially more prejudicial than probative. No witness with personal knowledge will testify at trial to the alleged authenticity of these documents: whether and when *any* of these documents were ever effective, distributed or made available in the Corvallis post office, or whether Ms. Hankins was ever trained about any of the information contained in these documents. They appear to be documents in Defendant's possession that just happen to mention boat hooks. Random, undated, incomplete, and unauthenticated documents mentioning boat hooks that were not effective or enforced in the Corvallis post office at the time of Ms. Hankins's injury lack relevance to whether her alleged failure to use a boat hook is a pretext for retaliation. Exhibit 506 should be excluded from evidence.

### D. **The Court Should Exclude Evidence or Reference to Any Discrimination Claim Ms. Hankins Filed Against USPS Under Any Theories Other Than the Instant Complaint**

Plaintiff moves to exclude any testimony, documents or other evidence of the proceedings in the Equal Employment Opportunity (EEO) claim Ms. Hankins filed against USPS, other than any admissible, sworn statements Ms. Hankins made if appropriately used for impeachment purposes. For example, USPS proposes to offer Exhibits 507 and 508 from the EEO matter. *See* Plaintiff's Objections to Defendant's Proposed Exhibits, filed concurrently. This Court should exclude any evidence or argument relating to Ms. Hankins's theory, and her EEO claim under that theory, that she may have been terminated for reasons other than that alleged in the Acting Secretary's action. Ms. Hankins's EEO claim that she may have been terminated in violation of the Americans with Disabilities Act, any

documents from and proceedings in the EEO matter are inadmissible because they are irrelevant and substantially more prejudicial than probative.

Moreover, Exhibit 507, which was submitted in connection with the EEO matter, constitutes is rife with hearsay statements (e.g., "Supervisor William Richards has confirmed this . . .") and statements made without personal knowledge (e.g., "That is because there WAS a boat hook . . ."). This exhibit also contains inadmissible opinion testimony, including Martin's impermissible lay and expert medical opinions ("She also said that the Physical Therapist said it was probably from repetitive use. She had only worked for us for 8 weeks at that time.") and impermissible lay and expert opinions about Ms. Hankins's handwriting when Martin lacks personal or expert knowledge to offer that bold-faced, unsupported and erroneous opinion. The evidence conclusively shows that Ms. Hankins did not write "jump." (Exhibits 1 and 5) The Court should exclude Exhibit 507 in its entirety.

The Acting Secretary's case involves a single claim under Section 11(c); any evidence from any other discrimination claim Ms. Hankins may have reasonably made, without attorney representation, are not relevant to whether she was terminated in violation of Section 11(c). As discussed above, it is often difficult to determine the employer's true motivation and the Acting Secretary should not be unfairly prejudiced by admission of any evidence connected to Ms. Hankins's EEO claim, particularly where the Acting Secretary has no involvement in any EEO proceedings that Ms. Hankins might bring. Permitting introduction of such evidence would potentially frustrate the Acting Secretary's ability to vindicate rights under Section 11(c).

### V. CONCLUSION

For the foregoing reasons, the Acting Secretary asks the Court to grant her motions in limine to: (1) admit evidence of and allow reference to at least five additional, similar Section 11(c) complaints against USPS that OSHA investigated and found meritorious since


approximately January 1, 2019; (2) exclude irrelevant evidence or references about boat hooks; and (3) exclude evidence or reference relating to any EEO claim Ms. Hankins filed against USPS, including any proceedings therein or outcome.

DATED this 26th day of March 2024.      Respectfully submitted,

    /s/Doris Y. Ng
Doris Y. Ng, CA Bar No. 169544
Trial Attorney
UNITED STATES DEPARTMENT OF LABOR

CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains fewer than 5,000 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED this 26th day of March 2024.        Respectfully submitted,


   /s/Doris Y. Ng

Doris Y. Ng, CA Bar No. 169544

Trial Attorney
UNITED STATES DEPARTMENT OF LABOR