MARC A. PILOTIN
Regional Solicitor
JESSICA M. FLORES
Counsel for Civil Rights
DORIS Y. NG (California Bar No. 169544)
Trial Attorney
Office of the Solicitor
UNITED STATES DEPARTMENT OF LABOR
90 7th Street Suite 3-700
San Francisco California 94103
Telephone: 415-625-2224
Ng.doris.y@dol.gov
*Attorneys for Plaintiff Julie A. Su, Acting Secretary of Labor
United States Department of Labor*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JULIE A. SU,<br>Acting Secretary of Labor,<br>United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>Defendant. | Case no. NO. 3:21-CV-01454-AN<br><br>**THE ACTING SECRETARY'S REQUESTS FOR JUDICIAL NOTICE OF (1) FIVE SIMILAR LAWSUITS FILED AGAINST USPS; (2) FACTS SUPPORTING JOB SEARCH COSTS; MEMORANDA IN SUPPORT OF MOTION**<br><br>Pretrial Conference Date: April 9, 2024<br>Trial Date: April 22, 2024<br><br>Request for Oral Argument |

In compliance with Local Rulle 7-1, Plaintiff certifies that she met and conferred in good faith with counsel for Defendant about the subject of this request for judicial notice but

Plaintiff's Requests for Judicial Notice        1

was unable to reach agreement as to the first request. USPS consents to the request that the Court take judicial notice of facts from two government websites supporting Ms. Hankins's job search costs.

Plaintiff Acting Secretary of Labor Julie A. Su filed this Action alleging Defendant USPS violated section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. §§ 651, *et seq.* ("the Act") when it terminated Cassandra Hankins ("Complainant" or "Ms. Hankins") while she was on probation because she reported her workplace injury to USPS.

## I.   REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rules of Evidence 201, the Acting Secretary moves the Court for an order taking judicial notice of (1) five enforcement lawsuits filed by the Acting Secretary in federal district court in Washington and California, since approximately January 1, 2019, alleging USPS took adverse actions against probationary employees for reporting workplace injuries, and the court records filed in those actions; (2) facts from two government websites to support the request for reimbursement of Ms. Hankins's job search expenses.

## II.   SUMMARY OF FACTS RELEVANT TO THE REQUESTS

Ms. Hankins began work as a City Carrier Assistant (CCA) for USPS on November 10, 2018, with a probationary period of 90 days. (Stipulated Facts, Dkt. No. 34, p. 2) Her supervisor was Postmaster Melissa McCormick ("McCormick"). On January 7, 2019, Ms. Hankins injured the back of her left knee when she stepped onto the back of her USPS vehicle to unload mail. Ms. Hankins reported her injury to USPS that same day.

On January 25, 2019, Ms. Hankins was called in for an investigative interview. The manager who conducted the interview, then-Postmaster of the Dallas, Oregon facility, Deborah Martin ("Martin"), harbored animus against probationary employees who reported workplace injuries—she admitted regularly informing new hires if they had a vehicle accident or an injury accident during their probationary period, they would likely be terminated and that she was essentially mentored on this practice. (Martin Depo. Tr. at 42:17-44:8; 46:3-17) During the interview, Martin asked Ms. Hankins whether there was a

boat hook in the Long Life Vehicle (LLV) Ms. Hankins drove. Ms. Hankins responded "No." (Stipulated Facts, Dkt. No. 34, pps. 3-4) At trial, Ms. Hankins will testify that she did not see a boat hook in the LLV that day. She will also testify to several reasons why, even if there was a boat hook in the LLV, she would have had to step onto the bumper anyway.

Martin testified she spoke with Jami Goodpastor [Manager of Post Office Operations] ("Goodpastor") after the investigative interview. (Stipulated Facts, Dkt. No. 34, p. 5) Martin told Goodpastor there was a boat hook in the vehicle, but Ms. Hankins did not use it; Goodpastor hastily concluded Ms. Hankins did not perform her job in a safe manner; and a decision was made to terminate Ms. Hankins. (Martin Depo. Tr. at 36: 21-25; 54:2-5) On January 28, 2019, USPS issued a Notice of Separation to Ms. Hankins. Ms. Hankins was terminated for failure to use a boat hook. (Stipulated Facts, Dkt. No. 34, p. 4; Martin Depo. Tr. at 36:21-25)

It is undisputed that Ms. Hankins had been doing a good job before she was terminated. At no time did USPS evaluate Ms. Hankins or inform her that she could be disciplined, including up to termination, for failing to use a boat hook. Moreover, the Acting Secretary will present evidence that USPS failed to provide training on the use of boat hooks. Most importantly, even if there was a boat hook in the LLV, McCormick will testify that *failure to use a boat hook is not egregious and is not a terminable offense* and she has never terminated an employee for failing to use a boat hook.

OSHA Whistleblower Investigator Jared Klein ("Klein") will testify that during his investigation of Ms. Hankins's complaint, USPS admitted there was no mention of the boat hook on any checklist of what an employee should report missing in their vehicle and thus Ms. Hankins would not have known to check for a boat hook. Klein will also testify that his investigation revealed USPS lacked documentation to support Ms. Hankins's termination.

The Acting Secretary will offer Klein's testimony that during the same time period, he investigated a similar complaint wherein Macauley Guerrero alleged USPS retaliated against him while he was a probationary employee because he reported his workplace

injury. Klein found the complaint meritorious and the case settled after the Secretary of Labor filed an enforcement action. Investigator Klein is aware of numerous, similar complaints that OSHA investigators have investigated in his region since approximately January 1, 2019, in which OSHA found USPS violated section 11(c) by terminating probationary employees for reporting their workplace injuries, including one case where a district court held on summary judgment that USPS violated 11(c). *See* Plaintiff's Motions in Limine, filed concurrently. Investigator Klein will testify USPS has a practice of retaliating against probationary employees who report workplace injuries.

### III. THE ACTING SECRETARY MUST PROVE USPS TERMINATED MS. HANKINS BECAUSE OF HER PROTECTED ACTIVITY AND THAT SHE IS ENTITLED TO RELIEF

As background, the Act, as safety legislation, is remedial and preventative in nature and must be liberally construed to effectuate its purpose. *Perez v. U.S. Postal Service*, 76 F. Supp. 3d 1168, 1182 (W.D. Wash. 2015) (citations omitted). Section 11(c) of the Act prohibits retaliation against employees who engage in protected activity under the Act. 29 U.S.C. § 660(c)(1) ("Section 11(c)"). The prohibition against discrimination includes "discriminating against an employee for reporting a work-related … injury, or illness." 29 C.F.R. § 1904.36. The regulations provide that employers should not "deter or discourage a reasonable employee from accurately reporting a workplace injury or illness." 29 C.F.R. § 1904.35.

To prevail on a Section 11(c) claim, the plaintiff must prove that the employee participated in protected activity, the employer subsequently subjected the employee to an adverse employment action, and a causal connection exists between the protected activity and the adverse action. *Perez*, 76 F. Supp. 3d at 1183. A causal link between a protected activity and an adverse action can "be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th

Cir. 2011). Once the plaintiff has established a *prima facie* case of retaliation, the burden shifts to the employer to "articulate a legitimate nondiscriminatory [or nonretaliatory] reason for its actions." *Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548, 549 (8th Cir. 1993) (internal quotations and citations omitted). If the employer satisfies that burden, the plaintiff must prove that the proffered reason is pretextual. *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1022 (9th Cir. 2018). The plaintiff may show pretext "directly by persuading the court that a retaliatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id*; *Perez v. Clearwater Paper Corp.*, 184 F. Supp. 3d 831, 842 (D. Idaho 2016).

      Here, the causal connection between Ms. Hankins's report of her workplace injury and her termination include USPS's: hasty and unsupported investigation into Ms. Hankins's injury, animus towards employees who report workplace injuries during probation, failure to follow its own policies, management testimony that the proffered reason for terminating Ms. Hankins was not a terminable offense, lack of corroborating evidence to support its termination, and the temporal proximity between Ms. Hankins's protected activity and USPS's adverse action. This evidence also demonstrates pretext.

      The Acting Secretary seeks "all appropriate relief," including a permanent, nationwide injunction; compensatory damages, including reimbursement of costs Ms. Hankins incurred in her job search; and punitive damages. Dkt. No. 1 at 3:19.

      The Acting Secretary seeks an injunction prohibiting USPS from violating Section 11(c), requiring training and posting of notices, and requiring use of Form 1750 to evaluate all probationary employees. *See, e.g.*, *Su*, 2023 WL 3172867, *7 (ordering a permanent injunction for all of Tacoma, Washington; finding "USPS . . . blatantly violated Section 11(c) . . . , demonstrating an open disregard for the requirements of the statute"). The requested injunction seeks to protect USPS's employees in all of its facilities because the policies at issue are established nationally. The Acting Secretary will present evidence that both a high-level Manager of Post Office Operations in Oregon and a Postmaster whom

USPS mentored to act with retaliatory animus and who served as a manager in post offices in Oregon and Florida, terminated Ms. Hankins.

The Acting Secretary also seeks an award of punitive damages based on the evidence that will be presented at trial and all reasonable inferences drawn from such evidence. Punitive damages are appropriate where an employer acts with "reckless or callous indifference" to one's "federally protected rights." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 548-49 (1999); *see also Acosta v. Fairmont Foundry, Inc.*, 391 F. Supp. 3d 395, 407 (E.D. Pa. 2019) (recklessness and malice to support a punitive damages award may be inferred from the facts). Here, evidence that two high-level managers rushed to terminate Ms. Hankins on the weak pretext that she failed to use a boat hook supports a reasonable inference that USPS acted with reckless indifference to Ms. Hankins's rights and to discourage others from reporting their workplace injuries. *See, e.g.*, *Clearwater*, 184 F. Supp. 3d at 844 (punitive damages awarded against employer who terminated employee to chill others from reporting safety violations).

### IV.   LEGAL ARGUMENT

#### A.   The Court Should Take Judicial Notice of Matters Not Reasonably Subject to Dispute

A Court must take judicial notice of adjudicative facts that are not subject to reasonable dispute where they (1) are generally known; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(a)-(e).

#### B.   Evidence of Five Similar Acting Secretary of Labor Actions Filed Against USPS in the Western Pacific Region and the Court Records Therein Are Not Reasonably Subject to Dispute and Are Appropriate for Judicial Notice

The Acting Secretary requests that the Court take judicial notice of the fact that these five federal cases have been filed and the court records therein:

(1) *Su v. U. S. Postal Serv. (Heath)*, 2023 WL 3172867 (W.D. Wash., May 1, 2023) (motion for summary judgment as to liability granted); (2) *Su v. USPS (Sweezer)*, No. 3:23-cv-0500, 2024 WL 21670 (W.D. Wash., Jan. 2, 2024) (ordering negative inferences against USPS regarding the reasons for termination); (3) *Walsh v. USPS (Jimenez)*, No. 3:22-cv-6002 (W.D. Wash. filed Dec. 22, 2022) (probationary employee terminated twelve days after reporting injury); (4) *Walsh v. USPS (Mitchell)*, No. 2:22-cv-1176 (W.D. Wash. filed Aug. 23, 2022) (probationary employee terminated fourteen days after reporting injury) and (5) *Walsh v. USPS (Guerrero)*, No. 3:21-cv-06808 (N.D. Cal.) (complaint filed on September 1, 2021).

The Acting Secretary proffers evidence of numerous complaints by probationary employees in the Western Pacific Region who suffered adverse actions soon after reporting workplace injuries, that OSHA received, investigated, and concluded USPS violated section 11(c), including the five federal court cases listed above. OSHA investigated these complaints during the same time period as Ms. Hankins's complaint. That the Acting Secretary filed these Section 11(c) cases against USPS and the court records filed therein are not subject to reasonable dispute. These cases are relevant because they tend to show USPS's general hostility towards probationary employees who report workplace injuries and that its reason for terminating Ms. Hankins is likely pretextual. The proffered evidence is also relevant to show that USPS likely acted with an unlawful motive and reckless disregard for its employees' Section 11(c) rights.

**C. The Court Should Take Judicial Notice of Uncontested Evidence Supporting Claimed Job Search Costs**

To support her request for the costs Ms. Hankins incurred in her post-termination job search, the Acting Secretary seeks judicial notice that (1) the IRS reimbursement rate for mileage was $.56 during the 2019-2021 time period; and (2) the average cost of a gallon of

Plaintiff's Requests for Judicial Notice        7

gas in Oregon during 2019-2020 was $1.75. These facts are readily verified in the following government websites:

https://www.irs.gov/tax-professionals/standard-mileage-rates

https://www.oregon.gov/odot/Business/Estimating/MFP-2021.pdf

USPS does not contest this request for judicial notice.

### V. CONCLUSION

For the foregoing reasons, the Acting Secretary asks the Court to grant her Requests for Judicial Notice.

DATED this 26th day of March 2024.         Respectfully submitted,

                                                      /s/Doris Y. Ng
                                       Doris Y. Ng, CA Bar No. 169544
Trial Attorney
UNITED STATES DEPARTMENT OF LABOR