IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JULIE A. SU,<br>Acting Secretary of Labor,<br>United States Department of Labor,<br><br>                    Plaintiff,<br>        v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>                    Defendant. | Case No.: 3:21-cv-01454-AN<br><br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

Doris Ng and Danielle L. Jaberg, U.S. DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, 90 7th Street, Suite 3700, San Francisco, CA 94103; Bruce L. Brown, U.S. DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, 300 Fifth Avenue, Suite 1120, Seattle, WA 98104.  Of Attorneys for Plaintiff.

Steve Schwartzman, UNITED STATES POSTAL SERVICE, P.O. Box 3686, Seattle, WA 98124-3686.  Of Attorney for Defendant.

**Adrienne Nelson, District Judge**

The Acting Secretary of Labor ("Acting Secretary" or "plaintiff") brings this action against the United States Postal Service ("USPS" or "defendant"), alleging that USPS terminated Cassandra Hankins ("Hankins") because she reported her workplace injury, in violation of the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 660(c)(1), referred to as Section 11(c) of OSHA.

Starting on April 22, 2024, the Court held a two-day court trial.  The Court then weighed and evaluated all evidence in the same manner that it would instruct a jury to do and has fully considered the legal arguments of counsel.  The Court now makes the findings of fact and conclusions of law stated below.  Any finding of fact that constitutes a conclusion of law is also adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact similarly is adopted as a finding of fact.

In the opinion of the Court, the facts found are all supported by the record, including findings for which the Court does not provide specific record citations.  Unless otherwise noted, when evidence is subject to an objection and the Court has relied on that evidence, the Court has overruled the objection for the reason or reasons identified either by the Court or, if the Court is silent, by the party

1

offering the evidence in response to the other side's objection.  When the Court has declined to consider evidence subject to an objection, the Court may state its basis for sustaining the evidentiary objection; alternatively, the Court simply may have found that the evidence subject to objection was not persuasive, thus making the objection moot.  All objections to evidence that the Court has not relied on, and all procedural objections not expressly addressed, are denied as moot.

The Court, being fully advised, enters judgment in favor of the Secretary and makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

The Court finds the following facts by a preponderance of the evidence:

1.    On November 10, 2018, USPS hired Hankins as a City Carrier Assistant ("CCA") with a probationary period of ninety (90) days, which would have ended on February 8, 2019.

2.    Although Hankins had been hired to work in the Dallas, Oregon office, she was reassigned to the Monmouth, Oregon office.  During her employment, she mostly worked at the Corvallis, Oregon office, with occasional work at other offices in Oregon.  Hankins rarely saw her supervisor, Postmaster Melissa McCormick ("Postmaster McCormick" or "McCormick").  McCormick has served as a postmaster in the Monmouth Post Office since 2010 and served as a postmaster in the Corvallis Post Office from 2010 to 2011.  During the time of Hankins's employment, McCormick worked out of the Monmouth office. Instead of receiving assignments from McCormick, Hankins received assignments from supervisors in the Corvallis office.

3.    Hankins received a two-week orientation in Portland, Oregon, and three days of on-the-job training in Corvallis, Oregon.

4.    On January 7, 2019, Hankins was injured at work while stepping into the back of a Long Life Vehicle ("LLV") at the end of shift to retrieve and unload mail.  Hankins testified that mail trays and packages had fallen over on her way back to the office, leading her to step onto the back of the bumper to get into the LLV to retrieve the fallen mail.  When she went to stand up, she felt and heard a pop and tear

in her calf.  That same day, Hankins reported her injury to a USPS supervisor and filled out an Accident/Injury Investigation Report.  Pl.'s Ex. 1.  The report, in Hankins's handwriting, states:

> "I was getting into the back of the LLV to reach a couple of trays that had slide [sic] forward.  When I went to put my left leg on the back of the LLV I felt something behind my left knee and upper calf pop/pull and cause instant pain."

Pl.'s Ex. 1.

5.      On January 8, 2019, Hankins, experiencing significant pain, went to the emergency room. Her doctor diagnosed her with a calf strain and instructed her not to work until approximately February 12, 2019, at which time she was allowed to return to work with restrictions.

6.      On Friday, January 25, 2019, USPS, through its Postmaster Deborah Martin ("Postmaster Martin" or "Martin"), who worked at the Dallas, Oregon office, conducted an in-person interview of Hankins.  A union steward was present, and another supervisor was present as a scribe.  During the interview, Postmaster Martin asked Hankins if there was a boat hook in the LLV she drove on the date of her injury and Hankins responded "no."  Postmaster Martin questioned Hankins about the differing accounts of events contained on a form CA-17[1], which was filled out by Hankins's orthopedist, and the Accident/Injury Investigation Report form, which was filled out by Hankins on the day of her injury.  The CA-17 contains a hand-written note, which states: "Jumping on jeep felt tear."  Pl.'s Ex. 2.  Referring to the two forms, Postmaster Martin asked Hankins which statement was correct, to which Hankins responded the orthopedist wrote the statement about "jumping on the jeep."  Hankins testified that she did not write "jumping on jeep" and at no time did she jump into her LLV.  Postmaster Martin did not ask Hankins any follow-up questions after the in-person interview.

7.      Through deposition testimony, Postmaster Martin testified that she spoke with her supervisor Jami Goodpastor ("Goodpastor"), manager of Portland post office operations, after conducting

---

[1] A CA-17 is a "Duty Status Report" given to the employee's attending physician.  This form provides the employee's supervisor and the Office of Worker's Compensation with interim medical reports containing information as to the employee's ability to return to any type of work.  *An Employee's Guide on Reporting a Work-Related Injury or Disease*, Justice Management Division, U.S. Department of Justice (Nov. 19, 2020), https://www.justice.gov/jmd/hr-order-doj/employees-guide-reporting-work-related-injury-or-disease#tc3-3.

an investigative interview with Hankins.  Martin testified that she told Goodpastor there was a boat hook in the vehicle, but Hankins did not use it to reach the mail trays; that Goodpastor concluded Hankins did not perform her job in a safe manner; and a decision was made to terminate Hankins.  Martin also testified she often informed new employees if they had a vehicle accident or an injury accident during their probationary period, they would likely be terminated.  Martin reasoned this statement with "there [were] lots of things you could get fired for if you were on probation, but if you couldn't be on time and at work for 90 days or safe for 90 days, then we're buying somebody that maybe, you know, after 90 days is actually going to get worse."  Martin Dep. Tr., ECF [68-1], 43:19-25.  Martin also testified that she received positive feedback about Hankins when she called the Corvallis office to speak with the supervisor there.

7.    Postmaster McCormick testified that Postmaster Martin made the decision to terminate Hankins and that Postmaster Martin urged her to sign the termination letter as soon as possible upon her return from a leave.  Postmaster McCormick signed the letter after having a brief conversation with Postmaster Martin wherein Martin told her that Hankins had been injured while working at the Corvallis office.  Postmaster McCormick was also told by Martin that Hankins jumped out of the back of the LLV and injured her knee.  While McCormick testified that she did not conduct her own investigation and relied on what Martin told her about the reason for terminating Hankins, Martin denied that she wrote the termination letter or that she was the decisionmaker.

8.    Postmaster McCormick testified that failing to use a boat hook is not a terminable, or even egregious, offense.  Further, McCormick testified that stepping onto the bumper is not a terminable, or even egregious, offense.

9.    On Monday, January 28, 2019, the next working day after the in-person interview, USPS terminated Hankins.  USPS's termination letter, signed by Postmaster McCormick, states:

> "During the course of your training and work history it has become evident that you have failed to grasp the fundamental skills required to be successful in your position.  Part of the requirement for Postal Employment is the ability and willingness to meet basic performance standards.  Your inability to meet the basic performance requirements further disqualifies you from Postal Employment."

Pl.'s Ex. 11.  USPS gave Hankins no other reason for her termination.  Postmaster Martin testified that Hankins was terminated for failure to use a boat hook.

10.     On January 31, 2019, Hankins filed a timely section 11(c) complaint with the Department of Labor, Occupational Safety and Health Administration ("OSH Administration").  OSH Administration concluded USPS violated section 11(c), which lead the Secretary of Labor to file this action.

11.     At trial, Hankins testified that she received only positive feedback from the supervisor who assigned her work and had not previously been warned about any unsafe behavior, nor had she previously been disciplined.

12.     USPS policy and accompanying instructions on Form 1750 require probationary employees to be evaluated at the thirty-day, sixty-day, and eighty-day timeframes.  Form 1750 documents expectations and whether the probationary employee's performance meet expectations.  The employee needs to initial Form 1750 to show that the employee knows what they need to improve.  Failure to provide evaluations and discussion of expectations would be a violation of USPS Portland District Policy.

13.     USPS Employee Handbook Section 584.52, Performance Evaluation Intervals, in effect during Hankins's employment, states:

> "The supervisor must discuss the employee's performance with the employee at the end of 30 days, and again at the end of 60 days.  Both the supervisor and the employee must initial Form 1750 to indicate that these discussions have taken place.  The final evaluation occurs at the end of 80 days, and it contains a definitive recommendation regarding whether the employee should be retained or separated.  This evaluation requires the signatures of both the supervisor and employee."

14.     USPS Employee Handbook Section 584.53, Formal Evaluations at Other Intervals, in effect during Hankins's employment, states:

> "Discussion, training, and counseling can correct most deficiencies.  The manager makes additional formal evaluations only when informal evaluations are unsuccessful and only after employees understand their deficiencies and have had a reasonable opportunity to correct them.  If these additional evaluations occur during an employee's probationary period, the manager documents them using Form 1750."

15.     During Hankins's employment, USPS failed to conduct any of the required thirty-day, sixty-day, or eighty-day formal evaluations or any additional formal evaluations of Hankins.

16.     Hankins testified that at no time did USPS inform her that she could be disciplined, including up to termination, for failing to use a boat hook, and at no time did USPS give her an opportunity to correct any alleged deficiency in her work performance before it terminated her.  Moreover, Hankins testified that she did not receive training about any of the various locations where she could find a boat hook in an LLV, if it was available, or how to retrieve, use, and re-attach a boat hook.  Hankins was not provided a demonstration on how to use a boat hook, and throughout her on-the-job training, the two trainers went in and out of the vehicle, but at no time did they use a boat hook.

17.     Boat hook policies or protocols did not appear in USPS's written training materials that were provided to Ms. Hankins.

18.     Hankins testified that, on the day of her injury, she did not see a boat hook in the LLV. She testified that even if there was a boat hook in the LLV, she likely would have needed to step onto the bumper of the LLV to reach the boat hook and typically stepped onto the bumper of the LLV to reach the strap to pull down the LLV door.  Moreover, she testified that even if there was a boat hook, the boat hook would not have allowed her to effectively reach for mail that had fallen out of the mail trays during her drive.  She testified that she recalls seeing a sign in the LLV stating something to the effect of "Save Your Back, Use a Boat Hook."

19.     At trial, Jared Klein ("Klein"), testified that since 2016 he has worked as a Whistleblower Investigator for OSH Administration.  Beginning in 2019, he investigated Hankins's Section 11(c) complaint against USPS and found it meritorious.  During his investigation, he found that USPS failed to evaluate Hankins using Form 1750 and that there was no mention of boat hooks on any checklist of what an employee should report missing in their vehicle.  Klein testified to the lack of corroborating notes or memoranda to support the termination, the lack of mention of boat hooks in the training materials USPS produced to him during his investigation, and the lack of written policies from the Corvallis or Monmouth post offices regarding the requirement to use boat hooks.  Klein testified that OSH Administration recommended seeking penalties in Hankins's case.

20.    Based on his experience and knowledge, Klein testified that USPS has a pattern of retaliating against probationary employees who report workplace injuries, but that he does not believe USPS has *a practice* of terminating employees who report workplace injuries. To support a conclusion that USPS has a pattern, Klein testified that since 2016, he knows of at least six complaints similar in nature against the USPS that are being litigated in federal court. He testified that these six complaints correspond to six merit findings by OSH Administration since his time as an investigator. Of these six, Klein testified none have taken place in the State of Oregon.

21.    Hankins testified that as a result of her termination from USPS, she was ineligible to be rehired at USPS. She testified that she suffered lost wages and out of pocket expenses related to her employment search. Hankins testified that she conducted a job search as soon as her doctors allowed her to work. She drove to different cities, including Sheridan and Salem, to look for work. She estimates spending approximately $50 per week on mileage and gas during the time period of April 30, 2019 to April 30, 2021.

22.    Klein testified that he calculated Hankins's lost wages and prepared a summary chart based on his review of her paystub at USPS and her paystubs from employment she found after her termination. Klein testified that the total loss, with interest, is $86,107.05.

23.    Hankins testified that she experienced deep shame and loss of self-esteem due to her termination from USPS for purportedly failing "to grasp the fundamental skills" and her "inability to meet basic performance requirements" of the CCA job. Hankins testified that she prided herself on being able to care for herself and her family. After her termination, she felt guilty that she was not able to contribute as much financially to the everyday needs of her household or to provide health coverage to her wife and children. She developed loss of enjoyment for activities that she previously enjoyed. She became moody and internalized negative feelings. She experienced bouts of worthlessness.

24.    Hankins's wife, Kendra Hankins, corroborated Hankins's testimony concerning her distress at being terminated from USPS and her upset upon learning she was ineligible for rehire.

25.     The Court takes judicial notice of the five following cases: (1) *Su v. United States Postal Service (Heath)*, No. 3:22-cv-05180-RJB, 2023 WL 3172867 (W.D. Wash. May 1, 2023); (2) *Su v. United States Postal Service (Sweezer)*, No. 3:23-cv-05007-RJB, 2024 WL 21670 (W.D. Wash. Jan. 2, 2024); (3) *Walsh v. United States Postal Service (Jimenez)*, No. 3:22-cv-6002-JNW (W.D. Wash. Dec. 22, 2022); (4) *Walsh v. United States Postal Service (Mitchell)*, No. 2:22-cv-1176-RAJ (W.D. Wash. Aug. 23, 2022); and (5) *Walsh v. United States Postal Service (Guerrero)*, No. 3:21-cv-06808-JCS (N.D. Cal.) (complaint filed on September 1, 2021). The Court takes judicial notice of the fact that these cases were filed and that they exist. Moreover, the Court takes judicial notice of the findings within the Opinion and Order on the motion for summary judgment in *Su v. United States Postal Service (Heath)*, No. 3:22-cv-05180-RJB, 2023 WL 3172867 (W.D. Wash. May 1, 2023). However, the Court did not judicially notice the factual allegations within the rest of the cases as they are being disputed in ongoing litigation.

26.     In *Su v. United States Postal Service (Heath)*, the Western District of Washington, on a motion for summary judgment, found that the USPS violated Section 11(c). 2023 WL 3172867 at *1. There, the employee was hired as a CCA and, similarly to Hankins, was placed on a ninety-day probationary period. *Id.* The employee was given a thirty-day evaluation using form 1750, in which her supervisor told her that she was performing really well. *Id.* After her thirty-day evaluation, the employee injured her knee while working. *Id.* at *2. The employee notified USPS of her injury and applied for worker's compensation. *Id.* at *4. USPS then, forty-nine days after reporting the injury, terminated the employee. *Id.* USPS alleged it fired the employee for unsatisfactory performance. *Id.* However, the court found that USPS failed to show that it would have fired her absent her reporting of her injury, receiving work accommodations, or filing an application for worker's compensation benefits. *Id.* Further, the court found that the USPS's proffered reason was pretextual. *Id.* at *5. To support this conclusion, the court noted that the employee's supervisor testified that, "if [the employee] had been given time to heal, her performance probably would have improved and she could have passed her probationary period." *Id.* at *6.

## CONCLUSIONS OF LAW

A.     **Section 11(c) of OSHA**

Section 11(c) of OSHA provides:

> "No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter."

29 U.S.C. § 660(c) permits an employee aggrieved by discrimination in retaliation for reporting workplace safety concerns to file a complaint with the Secretary of Labor. When a violation is found, the Secretary may bring an action on the complainant's behalf in district court, where the judge may award "all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay." 29 U.S.C. § 660(c).

While the Ninth Circuit has yet to address the proper framework for analyzing Section 11(c), other courts, including several district courts in the Ninth Circuit, have adopted the burden-shifting framework used for other employment discrimination statutes protecting against employer retaliation, such as Title VII of the Civil Rights Act of 1964. *See Su v. United States Postal Service*, No. 3:22-cv-05180-RJB, 2023 WL 3172827, *3 (W.D. Wash. May 1, 2023) (applying the three-stage burden-shifting framework); *Perez v. United States Postal Service*, 76 F. Supp. 3d 1168, 1183 (W.D. Wash. Feb. 13, 2025) (same); *Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548, 549 (8th Cir. 1993) (same). Title VII prohibits employers from discriminating against an employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

The Court finds the anti-retaliation provisions of Title VII comparable to the anti-retaliation provision in Section 11(c). In turn, the Court applies the Ninth Circuit's standard for employer retaliation under Title VII. To make out a *prima facie* case of retaliation, an employee must show that: (1) the employee participated in protected activity, (2) the employer subsequently subjected the employee to an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994).

9

At the trial stage, the Secretary bears the ultimate burden of proof "to show by a preponderance of the evidence that the challenged employment decision was 'because of' discrimination." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 856-57 (9th Cir. 2002) (en banc), *aff'd by Desert Palace, Inc. v. Costa*, 593 U.S. 90 (2003). If the Secretary proves its case in chief, it prevails if the finder of fact determines that discriminatory animus is the sole cause for the challenged employment actions. *Costa*, 299 F.3d at 856. By contrast, the employer prevails if it establishes that discrimination played no role in the challenged decisions. *Id.*

The employer may also defend by showing that it possessed a legitimate, non-discriminatory reason for taking the adverse actions against the complaining employee. *Id.* Where the employer has articulated mixed motives for taking the adverse actions, the employer may avoid liability only by proving that the employment decision at issue would have been the same even if discrimination had played no role. *Lam. v. Univ. of Haw.*, 40 F.3d 1551, 1564-65 (9th Cir. 1994); *Costa*, 299 F.3d at 856-57. The burden is on the employer to make this showing as an affirmative defense. *Lam*, 40 F.3d at 1564-65 (citation omitted). If the employer does so, the plaintiff must then show that the articulated reason is pretextual "either directly by persuading the [factfinder] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

In the present case, the parties stipulated that plaintiff has satisfied the first and second elements. Joint Pretrial Order, ECF [34], at 4-5. Accordingly, the Court finds that Hankins engaged in a protected activity when she reported her workplace injury to the USPS and that USPS's termination of Hankins constitutes an adverse action.

In turn, to prevail, the Secretary must establish a causal connection between the protected activity and the adverse action such that the Court could "reasonably infer" that the adverse action occurred in response to the protected activity. *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 881 (9th Cir. 1989).

Plaintiff may show causation through both direct and circumstantial evidence. Direct evidence is that which "if believed, proves the fact of discriminatory animus without inference or

presumption." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (internal quotation and alteration omitted).  Direct evidence includes statements demonstrating hostility toward a protected status. *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 662 (9th Cir. 2002) (collecting cases). Circumstantial evidence may also be used to show causation, provided that the evidence "give[s] rise to an inference of unlawful discrimination."  *Burdine*, 450 U.S. 248 at 253.  Temporal proximity between protected activity and subsequent adverse actions can constitute circumstantial evidence.  *See Dawson v. Entek Intern.*, 630 F.3d 928, 937 (9th Cir. 2011).

The Court finds significant circumstantial evidence of causation.  First, USPS terminated Hankins within twenty-one days of her protected activity and just eleven days before her probationary period would end.  *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) ("[C]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity.").

Second, and most significant to the Court, USPS's reason for termination is a pretext for discrimination.  USPS offers that Hankins was separated for failure to use a boat hook to retrieve mail trays while still a probationary employee.  USPS supports its reasoning with testimony from Postmaster Martin. Postmaster Martin emphasized the importance of working safely, especially during an employee's probationary period.  While the Court acknowledges that, to determine permanent hires, USPS must evaluate probationary employees' compliance with safety protocols, the evidence shows Hankins was never trained to use a boat hook.  The evidence shows that boat hook protocols were not included in USPS's written training materials, including its training checklist, *see* Pl.'s Ex. 6, and new employees were not trained on how and when to use a boat hook.  Indeed, Hankins testified that at no time did her two on-the-job trainers use a boat hook themselves during the three-day training or demonstrate how to use a boat hook.

More importantly, Postmaster McCormick testified that failure to use a boat hook was not a terminable offense, or even an egregious type of unsafe act.  Postmaster McCormick testified that she has never terminated an employee for failure to use a boat hook.  Consequently, USPS's proffered reasoning for Hankins's firing, failure to use safety equipment, was pretext for discrimination.

11

Additional circumstantial evidence is found in USPS's deviation from its own policies and procedures with regard to Hankins. USPS failed to evaluate Hankins using its Form 1750 at the thirty-day or sixty-day mark, in violation of its own policies. Such deviations provide circumstantial evidence of retaliatory intent. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1117 (9th Cir. 2011).

Finally, USPS failed to prove it would have terminated Hankins in absence of her protected activity. Once again, Postmaster McCormick testified that failure to use a boat hook is neither an egregious nor terminable offense. USPS failed to evaluate Hankins using its Form 1750 at the thirty-day or sixty-day time frame. Instead, up until reporting her injury, Hankins received positive feedback on her work performance. Thus, USPS has failed to carry its burden that it had a legitimate reason for its actions.

Accordingly, the Court finds that the Secretary has demonstrated by a preponderance of the evidence that Hankins's protected activities were a "substantial reason" for the aforementioned adverse actions. 29 C.F.R. § 1977.6(b).

**B.     Remedies**

Section 11(c) provides for recovery of compensatory and exemplary damages. The Court may "order all appropriate relief" including back pay. 29 U.S.C. § 660(c)(2). "[A]ll appropriate relief" includes the full range of civil remedies traditionally available to courts, including compensatory and exemplary or punitive damages. *Reich v. Cambridge Air Systems*, 26 F.3d 1187, 1195 (1st Cir. 1994); *see* Order on Pretrial Issues, ECF [65], at 3-6 (finding, absent contrary authority in the Ninth Circuit, Section 11(c) allows for a broad range of civil remedies).

Based on the foregoing conclusions, the Court finds that Hankins is entitled to economic and non-economic damages from USPS to compensate her for her losses.

1.     *Economic Damages*

Based on testimony from Klein, the Court awards Hankins back pay from June 30, 2020 through February 29, 2024 in the amount of $86,107.50. Further, the Court finds it appropriate to award Hankins job search costs, covering the period from April 30, 2019 through April 30, 2021, in the amount of $5,200.00. Hankins testified that she spent approximately $50 a week on gas and mileage. This amount

is reasonable based on the Internal Revenue Service ("IRS") reimbursement rate for milage, the average gasoline costs during that time period, and Hankins's testimony about her job search. *See Standard Mileage Rates*, IRS (Feb. 12, 2024), https://www.irs.gov/tax-professionals/standard-mileage-rates (the IRS reimbursement rate for mileage was $0.56 during the 2019-2021 time period); *Oregon Department of Transportation Monthly Fuel Price*, State of Oregon, https://www.oregon.gov/odot/Business/Estimating/MFP-2021.pdf ($1.75 was the average cost of a gallon of gas in Oregon during the 2019-2020 time period).

2.    *Expungement of Hankins's Employment Record*

The Court finds expungement of Hankins's employment record appropriate and warranted under the circumstances. The Court orders USPS to purge all negative information contained in its electronic or physical files that reference Hankins's termination, the reasons USPS purportedly relied on, and any impediment to her eligibility for rehire in the future. The Court further orders USPS to affirmatively state in Hankins's personnel file that she is eligible for rehire.

3.    *Emotional Distress Damages*

In addition to the economic damages Hankins suffered, she endured emotional distress as a result of USPS's actions. Hankins testified to significant mental, emotional, and financial stress after being terminated by USPS. She testified to additional distress upon learning that she was ineligible for rehire. This testimony was corroborated by her wife, Kendra Hankins.

The Secretary seeks an award of $100,000 for emotional distress. While the testimony established that Hankins suffered emotional distress caused by her termination, the sum sought is not supported. The Court finds that emotional distress damages in the amount of $50,000 are more appropriate.

3.    *Permanent Injunction*

The Secretary requested broad, nationwide injunctive relief prohibiting USPS from violating Section 11(c), requiring training and posting of notices, and requiring use of Form 1750 to evaluate all probationary employees.

While the Court has broad equitable powers to redress past discrimination and prevent its recurrence, it must be satisfied that the requested injunctive relief is needed. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). "Generally[,] a person subjected to employment discrimination is entitled to an injunction against future discrimination, unless the employer proves its unlikely to repeat the practice." *E.E.O.C. v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1544 (9th Cir. 1987) (internal citation omitted); *see also Cummings v. Connell*, 316 F.3d 885, 897 (9th Cir. 2003) (providing that the district court may not issue an injunction unless persuaded that there is "some cognizable danger of recurrent violation, something more than a mere possibility"). Factors that a district court may consider in making this finding include:

> "the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the extent to which the defendant's professional and personal characteristics might enable or tempt him to commit future violations; and the sincerity of any assurances against future violations."

*United States v. Laerdal Mfg. Corp.*, 73 F.3d 852, 854-55 (9th Cir. 1995) (quoting *Federal Election Comm'n v. Furgatch*, 869 F.2d 1256, 1263 n.5 (9th Cir. 1989)).

The evidence adduced at trial does not support the conclusion that injunctive relief is necessary to eliminate past discriminatory effects as well as bar future discrimination similar to that suffered by Hankins. While the Court agrees USPS blatantly violated Section 11(c) as to Hankins, the Secretary failed to show broad injunctive relief, or even relief in this judicial district, is warranted.

The Secretary relies on five other cases[2], mostly in the Western District of Washington, to show that USPS has a pattern of retaliating against probationary employees who report workplace injuries. The Court acknowledges that these cases exist and allege similar injuries against USPS. The allegations in these cases, however, are unproven as they are being disputed in ongoing litigation. Because the Court

---

[2] The Court took judicial notice of the five following cases: (1) *Su v. United States Postal Serv. (Heath)*, No. 3:22-cv-05180-RJB, 2023 WL 3172867 (W.D. Wash. May 1, 2023); (2) *Su v. United States Postal Service (Sweezer)*, No. 3:23-cv-05007-RJB, 2024 WL 21670 (W.D. Wash. Jan. 2, 2024); (3) *Walsh v. United States Postal Service (Jimenez)*, No. 3:22-cv-6002-JNW (W.D. Wash. Dec. 22, 2022); (4) *Walsh v. United States Postal Service (Mitchell)*, No. 2:22-cv-1176-RAJ (W.D. Wash. Aug. 23, 2022); and (5) *Walsh v. United States Postal Service (Guerrero)*, No. 3:21-cv-06808-JCS (N.D. Cal.) (complaint filed on September 1, 2021).

cannot rely on unproven allegations, the Secretary cannot show a pattern in the Western Pacific Region. Moreover, the Secretary has not produced evidence of similar harms by the USPS outside of the Western Pacific Region. Thus, nationwide injunctive relief is not warranted.

Similarly, the Secretary has failed to show that limited injunctive relief in Corvallis, Monmouth, or broader Oregon post offices is needed. Klein testified that, since 2016, he is aware only of six complaints similar in nature against USPS—none of which have taken place in Oregon. These complaints correspond to the cases the Court has judicially noticed. Indeed, McCormick, who has postmaster experience both in Corvallis and Monmouth, testified she only terminates probationary employees for egregious safety offenses. The evidence proffered, therefore, shows that the discrimination against Hankins is an isolated incident, at least in this judicial district.

Accordingly, the Court denies the Secretary's request for injunctive relief without prejudice. The Court finds this denial appropriate in light of the pending cases in Washington, in which the Secretary is likely seeking similar broad injunctive relief. As those cases develop, a pattern of discrimination may become apparent, and the Secretary may gain recourse through those cases.

4.    *Punitive Damages*

Punitive or exemplary damages may be awarded in Section 11(c) cases to compensate the complainant for harm suffered and deter future violations. *See Reich*, 26 F.3d at 1195. While the Court finds that punitive damages are allowed under Section 11(c), *see* Order on Pretrial Issues 5-6, the Court finds that punitive damages are not appropriate in this case. The Court bases its reasoning on the lack of evidence produced by the Secretary to show that the discrimination against Hankins was not an isolated incident. In turn, punitive damages are not needed to deter future violations. Further, the economic and non-economic damages awarded to Hankins are appropriate to compensate Hankins for the harm she suffered. Accordingly, the Court denies the Secretary's request for punitive damages.

5.    *Attorney's Fees*

At closing and for the first time, the Secretary passingly requested reasonable attorney's fees. Pursuant to Federal Rule of Civil Procedure 54(d)(2)(A), "[a] claim for attorney's fees and related

nontaxable expenses must be made by motion unless the substantive law requires those fees to be provided at trial as an element of damages," and pursuant to Local Rule 54-3, "any motion for attorney['s] fees must set forth the relevant facts and arguments of the moving party, along with all supporting authorities, affidavits, or declarations."  Because the Secretary has failed to follow the proper procedures outlined in Federal Rule of Civil Procedure 54(d)(2)(A) and Local Rule 54-3, the Secretary's request is DENIED without prejudice.

## CONCLUSION

The Court makes the findings of fact and conclusions of law stated herein.  The Court separately will enter a judgment in favor of the Secretary of Labor and against the United States Postal Service in the total amount of $141,307.50 and directing the United States Postal Service to expunge Cassandra Hankins's employment record, consistent with these findings and conclusions.

IT IS SO ORDERED.

DATED this 10th day of May, 2024.

Adrienne Nelson
United States District Judge